*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *ANGEL FULLER-McMAHAN, et al.,* ) | |
| ) | |
| *Plaintiffs* ) | |
| ) | |
| v. ) | *Docket No. 05-58-P-H* |
| ) | |
| *CITY OF ROCKLAND, et al.* ) | |
| ) | |
| *Defendants* ) | |

*RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS*

The defendants, the City of Rockland, Maine and John A. Root, Jr., its code enforcement officer, move to dismiss the complaint in this action for declaratory judgment and injunctive relief, arising out of zoning activity. I recommend that the court grant the motion in part.

**I. Applicable Legal Standard**

The motion to dismiss invokes Fed. R. Civ. P. 12(b)(6), which provides for dismissal upon failure to state a claim on which relief may be granted. Defendants' Motion to Dismiss, etc. ("Motion") (Docket No. 5) at 1. "[I]n ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendants are entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff[s] would not be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

1

## II. Factual Background

The complaint includes the following relevant factual allegations. Two of the plaintiffs, Angel Fuller-McMahan and Martin O'Brien, seek to establish a methadone maintenance clinic in Rockland. Complaint (Docket No. 1) ¶¶ 1, 4-5. They have formed a Maine corporation, plaintiff Turning Tide, Inc. (together with McMahan and O'Brien, the "clinic plaintiffs"), through which they seek to operate the clinic at 77 Park Street, Rockland, or at another appropriate and suitable location within the city. *Id.* ¶ 6. Three of the remaining four plaintiffs (the "individual plaintiffs"), Susan Coe, Ray Doe and Vicki Roe (all fictitious names used to protect privacy), and the fourth remaining plaintiff, Vance McMahan, live in Thomaston, Spruce Head and Owl's Head, Maine, and are receiving methadone treatment for which they must travel considerable distances. *Id.* ¶¶ 7-10. They purport to sue on their own behalf and "on behalf of all others similarly situated." *Id.* The proposed clinic is intended to serve recovering narcotics addicts, including the plaintiffs who are currently receiving methadone treatment, in the Rockland area. *Id.* ¶ 14.

There is a critical need in the Rockland area for such a clinic. *Id.* ¶ 15. A significant number of potential clients live or work in Rockland or in close proximity to Rockland. *Id.* ¶ 16. Proximity of such a clinic is an important factor in the potential clients' chances for a successful recovery. *Id.* Previous narcotics addiction is a disability which renders individuals incapable of performing major life activities without the assistance and support provided by methadone treatment. *Id.* ¶ 17. Such individuals are persons with a disability, persons who have a record of disability and/or persons who are perceived as having a disability as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. *Id.* ¶ 18.

In order to become a transfer client of the proposed clinic, a narcotics addict or recovering narcotics addict must be stable and have been doing well for a long period of time in a standard

methadone program as demonstrated by sustained abstinence from illicit drugs and by good social functioning. *Id*. ¶ 19. The proposed clinic will also accept new clients who test positive for opiates and who express willingness to follow the clinic's treatment protocols. *Id*. In order to remain a client of the clinic, an individual must comply with a rigid treatment and regulatory protocol, including a physician-developed treatment plan, setting forth requirements for daily methadone maintenance, counseling, twice-monthly urine samples and monitoring. *Id*. ¶ 20. The proposed clinic does not post a significant risk of harm to the community. *Id*. ¶ 21.

At all relevant times, the defendants' actions with respect to the proposed clinic, the plaintiffs' applications and proposals and the individual plaintiffs have been purposeful and motivated by discriminatory animus toward the proprietors and potential clients of the methadone maintenance clinic. *Id*. ¶ 22.

On October 17, 2004 the clinic plaintiffs met with defendant John A. Root, Jr., the code enforcement officer for the city of Rockland, and sought guidance on which zoning districts would allow them to place a methadone maintenance clinic in the city. *Id*. ¶¶ 12, 23. The clinic plaintiffs were informed that the then-existing zoning ordinance permitted such a clinic to be located within zones C1 and C2. *Id*. On October 21, 2004 the clinic plaintiffs met with Root at 77 Park Street, located in the C2 zone, along with a real estate agent, an architect, a contractor, an electrician, a plumber and a security expert to discuss the site and parking and building requirements. *Id*. ¶ 24. Park Street is also Route One in Rockland and 77 Park Street is located in an area largely occupied by businesses, two door down from a drug rehabilitation facility and across the street from a tire company. *Id*. ¶ 25. The building at 77 Park Street is an unused commercial building with sufficient off-street parking, security, proximity to police, fire and emergency medical services, screening from the road for purposes of confidentiality, accessibility for clients, accessibility by public transportation

3

and other necessary features.  *Id*. ¶ 26.  It is the only or one of the only adequate properties at an affordable price in Rockland that meets the specific needs of the clinic.  *Id*.

On October 23 and 24, 2004 the clinic plaintiffs met with City Manager Tom Hall to review their intentions with respect to 77 Park Street.  *Id*. ¶ 28.  On November 18, 2004 the clinic plaintiffs entered into a business property lease for 77 Park Street.  *Id*. ¶ 29.  The clinic plaintiffs paid rent for the months of December 2004 and January and February 2005 in anticipation of preparing the property and operating the clinic.  *Id.*

On December 1, 2004 the clinic plaintiffs filed with the city's code enforcement office a building permit application requesting a change of use of the building at 77 Park Street to a methadone clinic, along with a site plan review application dated November 30, 2004.  *Id*. ¶ 30.  The applications were accepted as complete.  *Id*.  At that time, nothing in the city's zoning ordinance or elsewhere in its ordinances rendered a methadone clinic an inappropriate use or could otherwise have been construed to allow the city to deny the clinic plaintiffs the requested permits for a methadone maintenance clinic at 77 Park Street.  *Id*. ¶ 31.

On December 1, 2004, after the submission of the clinic plaintiffs' application, the city clerk issued notice of a special meeting of the Rockland City Council for December 2, 2004 to propose two ordinances in first reading.  *Id*. ¶ 32.  Proposed Ordinance # 31 defined sole source pharmacies and proposed Ordinance # 31 limited sole source pharmacies to the city's C3 zone.  *Id*.  The definition of "sole source pharmacy" encompasses only operations such as the proposed methadone maintenance clinic.  *Id*.  Other clinics, medical facilities and drug and alcohol rehabilitation facilities could still be located in the C2 zone, where 77 Park Street is located.  *Id*.  The City Council completed first reading and initial approval of these ordinances at its December 2, 2004 meeting.  *Id*.

The "sole source pharmacy" amendments had the effect of and were adopted with the intention of creating a separate zoning "use" category for methadone maintenance clinics in general and for the proposed facility in particular. *Id*. ¶ 33. The amendments were adopted with the specific intent of making it effectively impossible for any methadone maintenance clinic to be located in Rockland in proximity to the population center on any suitable and affordable property. *Id*. The amendments were specifically motivated by the desire to make it possible to deny the clinic plaintiffs' pending applications. *Id*. The C3 zone is a relatively small and largely rural area on the outskirts of Rockland, difficult to get to without going through another town, extremely difficult or impossible to access by foot or by public transportation, and characterized by large, expensive parcels of land typically housing businesses whose customers arrive by car. *Id*. ¶ 34. There are no economically viable, suitable properties for a methadone maintenance clinic available for rental in the C3 zone. *Id*. ¶ 35.

On December 13, 2004 the final reading and public hearing for Ordinance ## 31 and 32 were scheduled before the City Council. *Id*. ¶ 37. Ordinance # 31, which added the definition of "clinic" to section 19-302 of the Rockland zoning ordinances as well as adding the definition of a "sole source pharmacy," was passed to take effect on January 12, 2005. *Id*. The City Council amended Ordinance # 32 to apply to applications "pending or permitted on or after November 29, 2004." *Id*. ¶ 38. It further amended this proposed ordinance to add the plaza commercial (PC) zone as a zone in which sole source pharmacies would be a permitted use. *Id*. Because this amendment was deemed a substantive change of which the public had not previously been informed, a further public hearing on this ordinance was set for January 10, 2005. *Id*.

At the January 10, 2005 meeting of the City Council Ordinance # 32 passed in final reading. *Id*. ¶ 39. The measure allowing sole source pharmacies in the PC zone was removed. *Id*. With the two new ordinances, the proposed methadone maintenance clinic at 77 Park Street was classified as a

"sole source pharmacy" and not a clinic. *Id*. ¶ 40. No other facilities located in Rockland or proposing to locate in Rockland meet the definition of "sole source pharmacy." *Id*. ¶ 41. The ordinance changes were adopted and made retroactive only for the purpose of enabling the city to deny the clinic plaintiffs' applications. *Id*. ¶ 42.

On January 10, 2005 the City Council approved at first reading Ordinance Amendment # 4, which would subject sole source pharmacies to Planning Commission approval regardless of parking and other considerations. *Id*. ¶ 45. The amendment was proposed and approved in order to enhance the city's ability to prevent the proposed clinic from operating. *Id*.

On January 12, 2005 Root denied the application for a change of use to a clinic at 77 Park Street, referring to the actions of the City Council in adopting Ordinances ## 31 and 32. *Id*. ¶ 46. Although there is a right of appeal of Root's denials to the Zoning Board of Appeals, the adoption of the ordinances at issue renders any such appeal in this case futile. *Id*. ¶ 47. On February 14, 2005 the Rockland City Council held a public hearing and gave final approval to Zoning Ordinance Amendment # 4, subjecting sole source pharmacies to additional requirements and approvals by the Planning Commission. *Id*. ¶ 48.

Also on February 14, 2005, the City Council considered Ordinance Amendment # 9 which would rezone certain property from zones TB-2 and C-1 to zone C-3. *Id*. ¶ 49. This property, located near the intersection of New County Road and Glenwood Avenue was known as the "Tuttle Shoe Barn." *Id*. In an attempt to resolve the dispute with the city, the clinic plaintiffs had entered into a letter of intent to purchase this property, provided that it was zoned appropriately to permit a methadone clinic or sole source pharmacy. *Id*. Following debate, the City Council defeated this amendment by a vote of 3-2. *Id*.

The city's actions have made it impossible for a methadone maintenance clinic, and the clinic plaintiffs' proposed clinic in particular, to be located in Rockland. *Id*. ¶ 50.

### III. Discussion

The complaint alleges violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Rehabilitation Act, 29 U.S.C. § 794(a) (Count I); invalidity of the ordinances in question under the Supremacy Clause of the United States Constitution (Count II); violation of the guarantees of equal protection found in the federal and Maine constitutions (Count III); violation of substantive and procedural due process under the federal and Maine constitutions and unconstitutional taking of property (Count IV); violation of the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq*. (Count V); and violation of the Maine home rule statute, 30-A M.R.S.A. § 2101 *et seq*. (Count VI). Complaint (Docket No. 1) ¶¶ 54-78.

### A. Standing

The defendants contend that the plaintiffs lack standing to bring this action. Defendants' Motion to Dismiss, etc. ("Motion") (Docket No. 5) at 3-5. The doctrine of standing contains three elements.

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal punctuation omitted). The defendants base their motion on the first element. Motion at 3. With respect to this element, "a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm *him* . . . ." *Warth v. Seldin*, 422 U.S.

7

490, 508 (1975) (emphasis in original). "'Particularized' means that the injury must affect the plaintiff in a personal and individual way." *Dudley v. Hannaford Bros. Co.*, 146 F.Supp.2d 82, 85 (D. Me. 2001).

Specifically, the defendants contend that the plaintiffs have not incurred an "injury in fact" because the clinic plaintiffs do not allege that they had any interest in the lease of 77 Park Street at the time the complaint was filed; because the individual plaintiffs can only allege that they would use the proposed facility in the future; and because the alleged harm to the individual plaintiffs is not imminent. Motion at 3-5. Both the plaintiffs and the defendants present their arguments in the context of the specific claims alleged in the complaint. *Id.*; Plaintiffs' Opposition to Defendants' Motion [to] Dismiss ("Opposition") (Docket No. 6) at 5-9. However, as the plaintiffs note, *id.* at 9, the defendants' argument concerning the plaintiffs' standing to bring claims other than the ADA claim asserted in Count I of the complaint is too cursory and conclusory to merit consideration by the court. *See Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990). The defendants assert that "[e]ven if Plaintiffs are able to articulate an argument supportive of their right to maintain an action under the ADA, clearly, none of the Plaintiffs, either individually or collectively, have 'standing' to maintain other Federal or State causes of action against the Defendants under Counts II-VI of their Complaint." Motion at 5. A footnote to this sentence adds nothing substantive concerning the plaintiffs' standing in general to bring Counts II-VI. *Id.* at 5 n.1. This argument is simply insufficient to invoke the court's consideration.[1] *Pearl Investments, LLC v. Standard I/O, Inc.*, 257 F.Supp.2d 326, 355 (D. Me. 2003). My discussion of standing will accordingly be limited to the ADA claim.

---

[1] The defendants make a more developed argument with respect to standing to assert Counts II-VI in their reply brief. Defendants' Reply to Plaintiffs' Objection to Defendants' Motion to Dismiss ("Reply") (Docket No. 10) at 4-5. This expanded argument comes too late.

8

The defendants base their first standing argument on an erroneous premise. They assert that the clinic plaintiffs "base their 'standing' on a business lease." Motion at 4. Plaintiffs Fuller-McMahan and O'Brien do allege that that "had sufficient right, title and interest to property at 77 Park Street" at the time application for permits was made to the City of Rockland, Complaint ¶¶ 4-5, but that allegation is not identified as alleging standing. They specifically allege that all plaintiffs have standing "because they are all persons alleging discrimination on the basis of disability (ADA)." *Id.* ¶ 3. An entity has standing to pursue a claim under the ADA "if it suffered discrimination due to its plans to treat disabled individuals." *START, Inc. v. Baltimore County*, 295 F.Supp.2d 569, 576 (D.Md. 2003) (corporate plaintiff denied essential zoning permit to open methadone clinic has standing under ADA). *Accord, MX Group, Inc. v. City of Covington*, 293 F.3d 326, 334-35 (6th Cir. 2002); *Schneider v. County of Will*, 190 F.Supp.2d 1082, 1089-91 (N.D. Ill. 2002). A property interest is not necessary to establish standing under the ADA.

The defendants' second argument also fails. They contend that "[t]he mere fact that [the individual plaintiffs] currently receive methadone maintenance treatment in other cities and are required to travel to Westbrook and South Portland [] does not satisfy the 'injury in fact' criteria [sic]." Motion at 4. They cite no authority in support of this assertion. Preventing the individual plaintiffs from receiving treatment closer to their residences is an injury in fact. *See, e.g., Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004) (present intent to use transit system in future sufficient to establish injury in fact); *Courtney v. Smith*, 297 F.3d 455, 460 (6th Cir. 2002) (plaintiff forced to commute 700 miles roundtrip by challenged government action established injury in fact for purpose of standing).

Finally, the contention that the individual plaintiffs' injury is not "imminent," Motion at 5, is also erroneous. The actions of the city are alleged to have already caused injury to the individual

plaintiffs and to be continuing to do so. *See Dudley*, 146 F.Supp.2d at 85-86 (allegation that past discriminatory practice continues to exist sufficient to meet "imminent" requirement). That is sufficient under Rule 12(b)(6).

### B. Count I

The defendants contend that Count I must be dismissed because the complaint does not allege that the plaintiffs "filed (and were denied) a building permit application requesting a change of use of a building in the C3 Zone;" because "neither this Court nor the First Circuit has concluded that Title II of the ADA applies to zoning decisions;" and because the defendants have not prohibited the plaintiffs from operating a methadone maintenance clinic in Rockland but have "simply . . . exercised [the city's] rights to determine where that clinic should be located." Motion at 6. The final contention is a substantive argument, characterizing the facts in a light most favorable to the defendants; the only issue before the court at this time is whether Count I, as alleged, states a claim on which relief may be granted, when the facts are characterized in the light most favorable to the plaintiffs.

With respect to the second contention — the fact that neither this court nor the First Circuit has ruled on the question whether Title II of the ADA applies to zoning decisions — does not and cannot mean that this court must hold that it does not. As the defendants concede, Motion at 6-7 & Reply at 5, their position is supported by a minority of courts that have addressed this question. They contend that it is "more likely than not" that the First Circuit would adopt the minority view, Reply at 5, because the First Circuit stated in 1985 that "federal courts do not sit as a super zoning board or a zoning board of appeals," *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir. 1985). However, in that case the First Circuit noted, *id.*, that "the Supreme Court has yet to provide precise analysis concerning claims of this sort" — attacks on the action of local zoning boards under 42 U.S.C. § 1983 — and the case was decided five years before enactment of the ADA, 42 U.S.C. § 12101, Historical

Note. I find the decisions of the courts in the majority to be persuasive and conclude, as have they, that the ADA applies to zoning decisions. *E.g., Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732 (9th Cir. 1999); *Trovato v. City of Manchester*, 992 F. Supp. 493, 498-99 (D.N.H. 1997).

With respect to the defendants' first contention, it was not necessary for the clinic plaintiffs to apply for a permit to operate a methadone maintenance clinic in the C3 zone in order for them to bring their ADA claim. The plaintiffs have alleged that there are no suitable properties available in the C3 zone. Complaint ¶ 35. The defendants assert that this allegation is insufficient because the ordinance at issue does not "effectively prohibit[] the operation of methadone clinics within the city." Motion at 8. Again, this argument assumes a factual conclusion that is very much in dispute. In addition, regulations implementing the ADA define violating activity to include actions that are facially neutral but discriminatory in effect; an outright ban is not required. *E.g.*, 28 C.F.R. §§ 35.130(b)(1)(ii), (vii); 35.130(b)(3)(i); 35.130(b)(8). *See also Smith-Berch, Inc. v. Baltimore County*, 68 F.Supp.2d 602, 621-22 (D. Md. 1999).

The defendants suggest that analysis of the claim asserted in Count I under the federal Rehabilitation Act, 29 U.S.C. § 794(a), is the same for purposes of this motion as the analysis of the ADA claim. Motion at Motion at 6. The plaintiffs do not discuss the Rehabilitation Act at all. The defendants' view is correct. *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 23 n.2 (1st Cir. 2001).

The defendants' motion fails with respect to Count I.

### C. Count II

Count II of the complaint alleges that the adoption of the ordinance at issue violated the supremacy clause of the Constitution, because the ADA, the Rehabilitation Act, and the Comprehensive Drug Abuse Prevention and Control Act and Narcotics Addict Treatment Act

("CDAPC"), 21 U.S.C. § 801 *et seq.*, constitute a comprehensive federal scheme for the regulation and distribution of methadone with which a local government may not interfere. Complaint ¶¶ 61-65. The defendants contend that this count fails to state a claim on which relief may be granted because the zoning ordinance at issue allows methadone clinics to be located in the C3 zone. Motion at 9.[2] Again, it remains a factual question whether the practical effect of the zoning ordinance is to prevent any such clinic from operating in Rockland. The defendants discuss only the CDAPC. *Id*. Thus, any preemption claim based on the ADA and the Rehabilitation Act must be allowed to continue in any event.

The defendants cite one case in which a preemption argument based on CDAPC was rejected. Motion at 9. The brief discussion of the facts in *People v. Villacrusis*, 992 F.2d 886, 887 (9th Cir. 1993), makes that case distinguishable from the case at hand. The defendant had contended that a Guam criminal statute was preempted by CDAPC. *Id*. It remains possible that the very different local zoning ordinance at issue here might be preempted by CDAPC. *See, e.g., Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 1998 WL 1992569 (N.D. Cal. Aug. 25, 1998) at *11, *rev'd on other grounds,* 179 F.3d at 730-37.

### D. Count III

Count III of the complaint alleges that the defendants' actions violated the plaintiffs' rights to equal protection of the laws under the Maine and federal constitutions. Complaint ¶¶ 67-69. The defendants contend that the challenged ordinance "does not affect a fundamental right . . . nor does it create a suspect classification," making it necessary for the plaintiffs to allege that the ordinance bears

---

[2] In their reply, the defendants assert that the "[p]laintiffs have cited no authority for the proposition that the ADA or the CDAPC prevents local municipalities from enacting zoning ordinances." Reply at 6. Apparently, the defendants mean to argue that no plaintiff may ever assert a claim that has not been recognized by a court or in some other source that the law finds persuasive. In this court, plaintiffs are allowed to raise new claims, so long as there is some basis for those claims such that the possibility of recovery is reasonably apparent.

no rational relationship to the city's interest in regulating the siting of commercial enterprises. Motion at 10-11. They also contend that the complaint does not allege that the plaintiffs were treated differently from others similarly situated and that such treatment was based on impermissible considerations. *Id*. at 11.

The plaintiffs respond that they have stated an equal protection claim, citing paragraphs 21, 41, 43, 67-68 and 73 of the complaint. Opposition at 16-17. Of these paragraphs, numbers 21 and 43 add nothing to the consideration of an equal protection challenge. Paragraph 73 appears after Count III in the complaint and cannot be considered in evaluating the sufficiency of Count III.[3] Paragraph 41 asserts: "No other facilities located in Rockland or proposing to locate in Rockland meet the definition of 'Sole Source Pharmacy.'" Complaint ¶ 41. Paragraphs 67 and 68 provide:

> Rockland's actions were targeted specifically and only at the Clinic Plaintiffs' proposed methadone maintenance clinic and at the Individual Plaintiffs for the express purpose of denying the Clinic Plaintiffs approval of permit applications that would unquestionably have been granted and to which they were entitled under then-prevailing applicable law in Rockland.
>
> Rockland's actions were for invidious and unlawful purposes against a population protected by federal and state statute, and were intended to deny Plaintiffs' rights under both federal and state law.

*Id*. ¶¶ 67-68. May these paragraphs, taken alone or together, reasonably be read to allege that any similarly situated individual or individuals were treated differently by the defendants? *See JSS Realty Co. v. Town of Kittery*, 177 F.Supp.2d 64, 72-73 (D. Me. 2001) (holding that allegation that ordinance at issue was "targeted at" plaintiff's application not sufficient). It is not the definition of "sole source pharmacy" that is at issue in this case, because sole source pharmacies are allowed in the C3 zone under the ordinance. The critical allegation is that the C3 zone is unsuitable for such a proposed facility and that the city actors knew this. The First Circuit expressed "extreme reluctance" to

---

[3] In any event, that paragraph of the complaint states only a legal conclusion rather than any factual assertions. Complaint ¶ 73.

entertain equal protection challenges to local planning decisions in *Macone v. Town of Wakefield*, 277 F.3d 1, 10 (1st Cir. 2002), but a month later the Supreme Court, in *Swierkiewitz v. Sorema N.A.*, 534 U.S. 506 (2002), "signaled its disapproval of *all* heightened pleading standards except those that emanate from either congressional or Rule-based authority," *Educadores Puertorriqueños v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004) (emphasis in original). No such authority is apparent in this case. Therefore, the specific pleading requirements discussed in *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995), and *PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991) — cases cited by the defendants, Motion at 11 — as well as the reluctance expressed in *Macone,* while likely to be applicable in the context of summary judgment or one of the other procedural contexts listed by the First Circuit in *Hernandez*, 367 F.3d at 67, do not support dismissal of the equal protection claim minimally set forth in the complaint at issue here.

The defendants do not address the claim raised in Count III under the Maine Constitution, nor do they suggest that analysis of the state and federal constitutional claims is identical. Accordingly, the motion to dismiss Count III should be denied in its entirety.

### E. Count IV

Count IV alleges violations of the plaintiffs' rights to substantive and procedural due process under the federal and state constitutions and unconstitutional taking of their property. Complaint ¶¶ 71-74. The defendants contend that the complaint fails to identify the specific liberty or property rights that were violated, a necessary element of both due process claims. Motion at 12. They also argue that none of the plaintiffs is able to state a takings claim because none of them owns property or possesses vested property rights. *Id*. at 13. Finally, they assert that the takings claim fails because the complaint does not allege that the State of Maine has been given an opportunity to rule on what is essentially an inverse condemnation claim. *Id*.

14

The plaintiffs respond that they do not need to allege a property interest in order to state a due process claim and that, in any event, the lease for 77 Park Street and the application for a permit were property of the plaintiffs. Opposition at 17-20. They do not respond to the defendants' argument concerning their takings claim and that claim accordingly should be dismissed. *Andrews v. American Red Cross Blood Svcs.*, 251 F.Supp.2d 976, 979 (D. Me. 2003). The same is true of the issue of procedural due process; the plaintiffs' response addresses only the substantive due process claim. Opposition at 17-20. Again, the motion to dismiss does not mention the claims asserted under the state constitution, which therefore survive.

On substantive due process, in the context of the kind of claim asserted here, the First Circuit offers the following teaching:

> To establish a substantive due process claim, a plaintiff must demonstrate an abuse of government power that shocks the conscience or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests. Where a license or permit denial is involved, the class of cases which meets the constitutional threshold is narrowly limited. In *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32 (1st Cir. 1992), this court held that the denial of a land use permit, even if arbitrary, did not constitute a substantive due process violation unless it was a truly horrendous situation. *Id*. at 45. Similarly, we rejected a plaintiff's substantive due process claim where a regulatory board revoked his surveyor's license, allegedly due to the chairman's animus toward him, finding that the plaintiff failed to show that the treatment was shocking or violative of universal standards of decency. *Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir. 1990). This unforgiving standard guards against insinuating the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals.

*Collins v. Nuzzo*, 244 F.3d 246, 250-51 (1st Cir. 2001) (some citations and internal punctuation omitted). An allegation that the animus of a member of the board that granted the licenses at issue in that case drove the board to deny the plaintiff's application "fall[s] far short of establishing the type of 'horrendous situation' for which *Nestor Colon* left the door to federal relief 'slightly ajar.'" *Id*. at 251. The paragraphs of the complaint on which the plaintiffs rely to support their argument on this

15

issue, Motion at 18-19, provide no factual support for an allegation of a "horrendous situation" or a violation of "universal standards of decency," Complaint ¶¶ 24, 29-31, 43, 73. The federal due process claim therefore should be dismissed.[4]

### F. Count V

Count V alleges violation of the Maine Human Rights Act ("MHRA"). Complaint ¶ 76. The defendants contend that the claim raised by the plaintiffs under the MHRA does not track the ADA and, because this count includes no factual allegations but only alleges that the claims asserted under the ADA and the Rehabilitation Act may be pursued under the MHRA as well, Count V must therefore be dismissed. Motion at 14-15. Specifically, they assert that there is no provision in the MHRA that is analogous to 42 U.S.C. § 12132. *Id*. at 14.

The plaintiffs respond that the complaint states a claim under 5 M.R.S.A. §§ 4552 and 4592. Opposition at 20-21. They assert that the MHRA may "be read to prohibit the conduct of the City of Rockland in this case." *Id*. at 21. The problem for the plaintiffs is that they have not stated such a claim in the complaint, however indulgently it may be read. The sole allegation in Count V of the complaint is the following:

> Rockland's actions violate the Maine Human Rights Act, which, in all relevant particulars, tracks the Americans with Disabilities Act and Rehabilitation Act.

Complaint ¶ 76. This paragraph does not allege the claim that the plaintiffs discuss in their opposition memorandum. Therefore, Count V should be dismissed.

---

[4] If the question of the existence of a property right were to be reached, the Law Court's opinion in *Town of Sanford v. J & N Sanford Trust*, 694 A.2d 456 (Me. 1997), contrary to the suggestion of the plaintiffs, Opposition at 18, cannot be read to support the conclusion that Maine law recognizes a business lease as a property interest protected by the state or federal constitution. I note also that the complaint alleges only that rent was paid under the lease at issue for the months of December 2004 and January and February 2005. Complaint ¶ 29. The complaint in this action was filed on March 24, 2005. Docket. The plaintiffs admit that the lease "is no longer in effect." Opposition at 8. However, under Maine law a plaintiff may acquire a vested property right equitably, where bad faith or discriminatory enactment of a zoning ordinance for the purpose of preventing a legal use by the application is present. *Kittery Retail Ventures, LLC v. Town of Kittery*, 856 A.2d 1183, 1191 (Me. 2004).

### G.  Count VI

Count VI of the complaint alleges that the defendants' adoption of the ordinance at issue violated the Maine "home rule" statute, 30 M.R.S.A. § 2101 *et seq*., and therefore is null and void. Complaint ¶ 78.  The defendants contend that the factual allegation in the complaint is insufficient because it fails to specify how or why the city acted "without proper authority," that the ordinance was preempted by a state statute, or that the defendants' actions violated the state constitution or any other statute.  Motion at 15-16.  The plaintiffs respond that "[s]o long as Plaintiffs have a claim under the MHRA, they have a claim under Count VI."  Opposition at 22.  I have recommended that the claim under the MHRA be dismissed.  By the terms of the plaintiffs' only argument, therefore, Count VI should be dismissed as well.

### H.  Defendant Root

Defendant Root seeks dismissal of any remaining counts that are asserted against him on the grounds of absolute and qualified immunity.  Motion at 16-18.  The only action by Root specifically mentioned in the complaint is the denial of the application for a permit for a change of use at 77 Park Street.  Complaint ¶ 46.   He contends that this was a quasi-judicial act for which he is immune from suit under the doctrines of absolute and qualified immunity.  Motion at 16.  The plaintiffs respond that they seek only prospective injunctive relief against Root.  Opposition at 22-23.  This limitation is not apparent on the face of the complaint.  Each count requests an award of damages "for Defendants' [alleged wrongful acts]."  Complaint at  15, 16, 18, 19, 20.

So limited, it is apparent that the complaint is asserted against Root only in his official capacity.  *See also id*. ¶ 12 (Root "is made a party hereto in his official capacity").  The defendants admit that the qualified immunity defense is mooted by this limitation.  Reply at 8-9.  The defendants then make a new argument, attacking the plaintiffs' constitutional claims as void for failure to plead

facts that could support the existence of a municipal policy or custom. *Id*. at 9. This new argument comes too late in the proceedings and will not be considered. *White v. Meador*, 215 F.Supp.2d 215, 226 n.7 (D. Me. 2002).

The defendants' assertion of absolute immunity is not mentioned in their reply. A municipal employee is entitled to absolute immunity only if the governmental function he or she was performing at the relevant time was "so integrally related to the judicial process as to warrant shielding [the employee] from liability." *Bass v. Attardi*, 868 F.2d 45, 50 (3d Cir. 1989). The sole case cited by the defendants on this point, *Destek Group, Inc. v. State of New Hampshire Pub. Utils. Comm'n*, 318 F.3d 32, 40 (1st Cir. 2003), is not sufficiently similar on its facts to those alleged in the complaint in this action to allow the court to decide as a matter of law that Root is entitled to absolute immunity.

### I. Damages

The defendants contend that punitive damages are not available on the ADA and constitutional claims asserted by the plaintiffs in this case. Motion at 18-19. They ask, "[i]n the event the Court grants in part and denies in part this motion to dismiss," that the court rule "on the type of damages potentially available to the Plaintiffs under their surviving . . . cause(s) of action." Motion at 19. They note in their reply that the plaintiffs "have withdrawn their claim for punitive damages under the ADA." Reply at 9; *see* Docket No. 9. Punitive damages are not available under 42 U.S.C. § 1983 on a theory of municipal liability. *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1238 (D. Me. 1996). Accordingly, the motion to dismiss should be granted as to any claim for punitive damages in Counts III and IV, which invoke section 1983, and on the ADA claim asserted in Count I. Any further ruling as to damages pursuant to the defendants' extremely general request would be premature at this time.

## IV. Conclusion

For the foregoing reasons, I recommend that the motion to dismiss be **GRANTED** as to federal constitutional claims asserted in Count IV; any claims for punitive damages asserted in Counts III and IV and in connection with the ADA claim in Count I; and Counts V and VI in their entirety, and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of July, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge